## UNITED STATED DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA,**
      Plaintiff,                              Case No. :8:16-cr-00211

v.

**ALTIUS WILLIX,**
      Defendant.
_____  ___/

### DEFENDANT ALTIUS WILLIX'S SENTENCING MEMORANDUM

Comes now, the Defendant, Altius Willix, by and through his undersigned counsel, and files this Sentencing Memorandum. Altius Willix was found guilty after a jury trial of Count One through Four of the Indictment charging Assault of an Officer of the United States Causing Bodily Injury (19 U.S.C. §§ 111(a)(1) and (b); Counts One and Two), Conspiracy to Possess with Intent to Distribute 500 Grams or more of Methamphetamine ( 21 U.S.C. §§ 841(b)(1)(A) and 846), and Attempted Possession with Intent to Distribute 500 Grams or more of Methamphetamine (21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii)) on August 4, 2016. The Presentence Investigation Report ("PSR") scores Mr. Willix at an Adjusted Offense Level of 28 as to Counts One and Two and to Adjusted Offense Level of 38 as to Counts Three and Four, criminal history category II, with an advisory Guideline range of 262 months to 327 months, however, Mr. Willix is subject to an enhanced penalty pursuant to 21 U.S.C. §851 which calls for a minimum mandatory term of imprisonment of life.

For the record, Mr. Willix objects as follows: to the scoring of the firearm enhancement, to the scoring enhancement for the minor injuries received by the federal agents, for the enhancement for official victims, and for the upward adjustment for his role as an organizer, leader, manager, or

supervisor.  He calculates his total offense level for Counts One and Two to be 19 and for Counts Three and Four, 34.  With a Criminal History Category calculation of  II, his Guideline range is 33 to 41 months as to Counts One and Two and 168 to 210 months as to Counts Three and Four, notwithstanding the enhanced penalty of life.

Additionally, although the Government does not intend to file a 5K1.1 Motion, Mr. Willix, for the record, at the time of sentencing will provide the particulars of his substantial cooperation with the government to the Court.  Said cooperation, which began immediately upon his arrest, led to the apprehension of more culpable individuals and to the seizure of multi-kilos of Methamphetamine.  During the trial, an agent testified that more than five (5) individuals have been arrested and prosecuted as a direct result of Mr. Willix's cooperation.

The issues addressed in this memorandum are to move this Court to:

(1)  rule that Mr. Willix did not use a firearm, and, therefor, he should not receive a 3 level enhancement pursuant to USSG Section 2A2.2(b)(2)(c);

(2)   rule that the injury enhancement of 3 levels, found in U.S.S.G. 2A2.2(b)(3)(A), is inapplicable;

(3)  rule that a 3 level enhancement for "official victim" pursuant to U.S.S.G. § 3A1.2(a) rather than a 6 level enhancement pursuant to U.S.S.G § 3A1.2(c)(1) is appropriate;

(4)  rule that Mr. Willix is not subject to a 2 level adjustment for his role in the offense;

(5) find that a variance is appropriate,  given Mr. Willix's substantial assistance to the government, even though a 5K1.1 motion is not filed;

(6) grant a downward variance based on other enumerated factors under 18 U.S.C. § 3553(a).

## § 2A2.2 COMPUTATION

The PSR erroneously increases the Base Offense Level of 14 by 3 because "....a dangerous weapon (including a firearm) was brandished or its use was threatened...."  In the case at bar it is uncontroverted that  Mr. Willix never "brandished" a firearm.  Additionally, this Court found, at the close of the government's case, that the government  failed to present a *prima facie* case that a firearm was used by Mr. Willix. Thus, since Mr. Willix did not "use" a firearm, he could not have threatened its use, making this enhancement is inapplicable.

The "bodily injury" enhancement is also inapplicable in this case.  2A2.2(3) states: "If the victim sustained bodily injury, increase the offense level according to the seriousness of the injury: (A)Bodily Injury add 3...."  The Commentary section directs tha "bodily injury" is defined in § 1B1.1(Application Instructions), Application Note 1.  The 1B1.1 definition states that "[b]odily injury" means any significant injury; <u>e.g.</u>, an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought."  The injuries suffered by the agents were very minor and did not rise to the level of injury contemplated by this definition in the U.S.S.G.  Therefore, the enhancement of 3 levels for "bodily injury" is inapplicable.

In the PSR, Mr. Willix is held accountable for a 6 level increase pursuant to § 3A1.2(c)(1).  The enhancement   does not apply because Mr. Willix did not act "....in a manner creating a substantial risk of serious bodily injury...."  It should again be  noted that the agents received only minor scratches.  Additionally, at trial the defense presented an eye witness to the encounter who did not know Mr. Willix. That witness, Demetrius Hendry, testified that Mr. Willix never hit nor kicked any agent, and he never tried to obtain a weapon from any agent.  According to Mr. Hendry Mr. Willix was always face down on the ground, and he only tried to get up to run away.  The defense further interviewed, but were unable to call as witnesses, Samuel Merritt and Katrina Gunter.  Mr. Merritt's and Ms. Gunter's testimony

would have corroborated the testimony of Mr. Hendry and each others.  Again, it should be noted that none of these witnesses knew Mr. Willix, and interestingly, none were interviewed by law enforcement at the time of the incident.

Finally, the question asked by the jury during its deliberation, which is attached hereto as Exhibit 1, implies that the jury did not find that Mr. Willix committed a "forcible assault" against the agents.  The jury asked, "...if we find that the defendant resisted, & opposed Federal Officers, is that sufficient to uphold the charge?"  As such, the jury rejected the finding that Mr. Willix "forcibly assaulted", "impeded", "intimidated", and "interfered" with the agents.  As such, Mr. Willix should not receive a 6 level enhancement pursuant to § 3A1.2(c)(1).  However, since the offense involves an "official victim"an enhancement of 3 levels pursuant to § 3A1.2(a) is appropriate.

## ROLE IN THE OFFENSE

The 2 level enhancement for Aggravating Role pursuant to § 3B1.1(c) does not apply.  In the Application Notes of the Commentary it is stated that "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants.  An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization."  The government, which bares the burden of demonstrating an aggravating role, cannot show that Mr. Willix organized, lead, managed or supervised any other participant.  Thus, the 2 level upward adjustment for "aggravating role" is inapplicable.

## DOWNWARD VARIANCE FOR EXTRAORDINARY SUBSTANTIAL ASSISTANCE TO THE GOVERNMENT

Although the government does not intend to file a 5K1.1 Motion, Mr. Willix, at the time of sentencing will provide the particulars of his cooperation to the Court.  His substantial cooperation

with the government, which began virtually immediately upon his arrest, led to the apprehension of more culpable individuals and to the seizure of multi-kilos of Methamphetamine.

Even where the government does not file a motion pursuant to Section 5K1.1, the Court can still take Mr. Willix's substantial assistance into account when considering the appropriate sentence. *See United States v. Judge*, 649 F.3d 453, 457 (6th Cir. 2011) (affirming district court's sentence which included considering of defendant's cooperation in its Section 3553(a) analysis); *United States v. Gapinski*, 422 F. Appx. 513, 520 (6th Cir. 2011) (district court erred when it refused to consider defendant's argument for a variance based on substantial assistance); *United States v. Blue*, 557 F.3d 682, 686 (6th Cir. 2009) ("[P]ost-Booker, the government's failure to file a Section 5K1.1 departure [motion] does not necessarily preclude a sentencing court from taking into account substantial assistance when considering the appropriate sentence in light of the Section 3553(a) factors."); *cf. United States v. Jackson*, 296 F. Appx. 408, 409 (5th Cir. 2008) (district court properly considered defendant's cooperation with the Government, despite the absence of § 5K1.1 motion).

### (3) DOWNWARD VARIANCE BASED ON SECTION 3553(a) FACTORS

The goal of sentencing is to impose the least onerous sentence consistent with the purposes of sentencing, which Congress has identified as punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a) (providing that a court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing). To achieve these ends, § 3553(a) requires sentencing courts to consider not only the advisory Guidelines range, but also the facts of the specific case through the lens of seven factors, including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

5

(2) the need for the sentence imposed—
    a.  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    b.  to afford adequate deterrence to criminal conduct;
    c.  to protect the public from further crimes of the defendant; and

    d.  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established . . . ;
(5) any pertinent [Sentencing Commission] policy statement . . . ;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

Altius Willix submits that, based on the facts found in the Presentence Investigation Report, and the additional facts to be presented at the time of sentencing, a downward variance will be appropriate by the § 3553(a) factors.

Through Mr. Willix's actions subsequent to his arrest, it is clear that he has expressed deep remorse and responsibility for his actions. His acceptance of responsibility, plea of guilty, and cooperation with authorities corroborate this genuine remorse. In *United States v. Howe*, 543 F.3d 128, 135 (3d Cir. 2008), the district court, taking into consideration the defendant's remorse, imposed a sentence of probation with three months' house arrest despite an advisory Zone D Guideline range of 18–24 months imprisonment. *See also United States v. Kim*, 364 F.3d 1235 (11th Cir. 2004) (affirming a downward departure where the defendants' extraordinary restitution demonstrated their sincere remorse and acceptance of responsibility). The appellate court in *Howe* recognized the unique position of the district court to assess genuine remorse as part of the whole picture of a defendant. This unique role was noted by the Supreme Court in *Gall*: "The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant

6

before him than the [Sentencing] Commission or the appeals court." *Gall v. United States*, 552 U.S. 38, 51–52 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 357–358 (2007)). Mr. Abdul's post-crime conduct is relevant and compelling.

A sentence of life for the instant conviction conflicts with the policies and goals outlined in memoranda to the United States Attorneys and the Assistant Attorney Generals by Attorney General Eric Holder issued on August 12, 2013 and August 29, 2013. Attorney General Holder has unequivocally stated that long sentences for low-level, non-violent drug offenses do not promote public safety, deterrence and rehabilitation. Attorney General Eric Holder*, Department Policy on Charging Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug Cases*, Memorandum to the United States Attorneys and the Assistant Attorney General for the Criminal Division, August 12, 2013. Further, the rising prison costs have resulted in reduced spending on prevention and intervention programs which requires public safety expenditures to be made in a smarter and more productive manner that in the past. *Id*. As the Attorney General pointed out in his memos, it is necessary to keep in mind a defendant's conduct, a defendant's criminal history, the circumstances relating to the offense, the needs of the community, and federal resources and priorities when making assessment about Defendants and fair and proper sentences. *Id*.

## CONCLUSION

Although this Court is bound by the government's statutory enhancement as to Counts Three and Four to sentence Mr. Willix to life (based on the request of the agents involved in Courts One and Two), he respectfully requests, for the record, that this Court, nonetheless, calculate an appropriate sentence pursuant to the U.S.S.G. and § 3553(a), including, but not limited to his substantial assistance to the government.

Respectfully submitted,

*/s/:DeeAnn D. Athan*
DEEANN D. ATHAN
Escobar & Associates, P.A.
2917 W. Kennedy Blvd., Suite 100
Tel:(813)875-5100
Fax:(813)877-6590
Tampa, Florida 33609
dathan@escobarlaw.com
Florida Bar No.: 391166

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was electronically filed with the United States District Court Clerk of Court via the CM/ECF system which will send a notice of electronic filing to the Office of the United States Attorney,  this 7th day of December, 2016.

*/s/:DeeAnn D. Athan*
DEEANN D. ATHAN
Escobar & Associates, P.A.
2917 W. Kennedy Blvd., Suite 100
Tel:(813)875-5100
Fax:(813)877-6590
Tampa, Florida 33609
dathan@escobarlaw.com
Florida Bar No.: 391166

FINAL Sentence Memo Altius Willix December 7, 2016

8

Counts 1 and 2 alledge Mr Willis "did forcibly assault, resist, oppose, impede, intimidate and interfere"... ~~The~~

The judge's instructions tell us this charge can be ~~proven~~ upheld only if all of the following are proven:

    1. That the defendant "forcibly assaulted" the person described

  etc.

However in another section of the instructions the judge stated

"the indictment may allege the several ways in the conjunctive,..., if only <u>one</u> of the alternatives is proved beyond a reasonable doubt ..."

Our question is this, if ~~it~~ We find that the defendant resisted, & opposed Federal Officers, is that sufficient to uphold the charge?

Patricia L. Hudson

Exhibit 1