[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17611
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cr-00211-RAL-JSS-1

UNITED STATES OF AMERICA,

                                                                                                   Plaintiff - Appellee,

versus

ALTIUS WILLIX,

                                                                                                   Defendant - Appellant.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 5, 2018)

Before MARCUS, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Altius Willix appeals his convictions for forcibly assaulting a police officer and inflicting bodily injury, 18 U.S.C. § 111(a)(1), (b), and for both conspiring to possess with intent to distribute and attempting to possess with intent to distribute 500 grams or more of methamphetamine, 21 U.S.C. §§ 841(b)(1)(A)(viii), 846. Willix argues that the district court erred in (1) denying his motion to suppress evidence obtained in the warrantless search of his minivan; (2) denying his motion to suppress statements he made in an interview with Drug Enforcement Agency (DEA) officials; and (3) denying his requested jury instruction on the meaning of "inflict" under 18 U.S.C. § 111(b).  Upon thorough review, we find that (1) the warrantless search of Willix's van was proper under the automobile exception; (2) the district court did not err in finding that the statements Willix made in the interview with DEA agents were admissible; and (3) the district court did not err in refusing to provide a specialized instruction on the term "inflict."  We therefore affirm his convictions.

I.

Willix's convictions stemmed from the investigation of a U.S. mail parcel containing roughly four pounds of methamphetamine.  While agents posing as postal carriers attempted to deliver the parcel to its intended address, Willix arrived—by minivan—and told the agents that he had been expecting the package.  But Willix refused to sign for it, so the agents left.  Immediately thereafter, Willix

2

got back in his minivan, drove to the end of the block, parked, and began walking back down the street.  At this point, two other agents—wearing vests emblazoned with "Police"—approached Willix.  He fled.  After a series of chases and violent struggles, during which Willix twice attempted to unholster an agent's firearm, he was eventually apprehended.  Two officers sustained injuries in the process.  Willix was arrested for assaulting federal officers.

The local police impounded and searched Willix's minivan without a warrant and found evidence inside connecting him to the parcel of methamphetamine.  After he was arrested, Willix agreed to a post-*Miranda*[1] interview with DEA agents, in which he provided incriminating statements about the drugs.

Prior to trial, Willix moved to suppress his post-arrest statements, arguing that his *Miranda* waiver was not knowing, intelligent, and voluntary and that he only talked because the officers promised him that they would not charge him with the drug offenses.  He also moved to suppress any evidence seized from his minivan, arguing that the search was not a valid search incident to arrest or inventory search.  The district court denied both motions, finding that Willix had been read his *Miranda* rights, knowingly and voluntarily waived them, and that the officers "did nothing more than impress on him the need to be truthful and upfront

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

and, in return, they would convey the truthfulness of his testimony to the prosecutor." The district court also found that the inventory search exception applied.

At trial, Willix requested that the district court instruct the jury that the term "inflict," as used in the "inflicts bodily injury" provision of the assault statute, is defined more narrowly than "cause," and that the government was required to prove that Willix inflicted the officers' injuries through a direct, intentional act. The district court declined to provide the instruction. The jury convicted Willix on the assault and drug charges, and this appeal ensued.

## II.

Several standards of review apply to this case. We review a district court's denial of a motion to suppress under a mixed standard, reviewing the findings of fact for clear error and the application of the law to those facts de novo. *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000). "[A]ll facts are construed in the light most favorable to the prevailing party below." *Id*.

"The district court's ultimate conclusion on the voluntariness of a confession, or the waiver of *Miranda* rights, raises questions of law to be reviewed de novo." *United States v. Barbour*, 70 F.3d 580, 584 (11th Cir. 1995) (internal quotation marks omitted). However, in the context of a motion to suppress, "[c]redibility determinations are typically the province of the fact finder because

the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). We have held, therefore, that a "trial judge's . . . choice of whom to believe is conclusive on the appellate court unless the judge credits *exceedingly* improbable testimony." *Id.* (internal quotation marks omitted).

Lastly, a district court's refusal to give a requested instruction to the jury is reviewed under an abuse of discretion standard. *United States v. McGarity*, 669 F.3d 1218, 1232 (11th Cir.). A district court has "broad discretion in formulating its charge as long as the charge accurately reflects the law and the facts." *Id.* But when a challenge to a given jury instruction presents a question of law, we review it de novo. *United States v. Gibson*, 708 F.3d 1256, 1275 (11th Cir. 2013).

III.

A. *Warrantless Search of Willix's Minivan*

Willix first argues that the warrantless search of his minivan violated the Fourth Amendment. The government responds that two exceptions to the warrant requirement apply—the inventory exception and the automobile exception.

While we have doubts about whether we agree with the district court's determination that the warrantless search can be justified under the inventory

exception alone,[2] the record demonstrates that the search of Willix's minivan was lawful under the automobile exception. *See United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010) ("[W]e may affirm the denial of a motion to suppress on any ground supported by the record.").

Under the automobile exception, agents can search a car without a warrant if "(1) the vehicle is readily mobile (i.e., operational); and (2) agents have probable cause to believe the vehicle contains contraband or evidence of a crime." *United States v. Tamari*, 454 F.3d 1259, 1261 (11th Cir. 2006). The latter element requires a showing that, "under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." *Id.* at 1262 (internal quotation marks omitted). Unlike a search incident to arrest, the automobile exception "allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader." *Arizona v. Grant*, 556 U.S. 332, 347, 129 S. Ct. 1710, 1721 (2009). In determining

---

[2] The evidence suggests that Willix's van was impounded solely because the police believed it was of evidentiary value to the drug investigation—and not for any recognized "community caretaking function." *See South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S. Ct. 3092, 3097 (1976). Willix's minivan was legally parked, and Twanna Dewdney, the mother of Willix's child, testified at the suppression hearing that she arrived at the scene of the arrest and requested to take the van, but that the officers refused. "Inventory searches must . . . be limited to effectuation of the recognized purposes for which they are conducted and they may not be used as a pretext for intrusive investigatory searches that would otherwise be impermissible." *United States v. Bosby*, 675 F.2d 1174, 1179 (11th Cir. 1982) (internal quotation marks omitted). While the "mere expectation of uncovering evidence will not vitiate an otherwise valid inventory search," *id.*, here, Winter Haven Police Officer Michael Roe testified at the suppression hearing that the van was impounded *because* it was of evidentiary value and admitted that he would have impounded the van whether someone came to retrieve it or not.

whether there was probable cause, we may consider the collective knowledge of law enforcement officers involved, so long as "they maintained at least a minimal level of communication during their investigation." *United States v. Willis*, 759 F.2d 1486, 1494 (11th Cir. 1985).

Here, the evidence and testimony at the suppression hearing show that the officers were collectively aware that: (1) agents attempted a delivery of a mail parcel containing four pounds of methamphetamine; (2) Willix showed up at the delivery address in his minivan and stated that he was expecting the package; and (3) Willix fled when approached by officers and fought them when apprehended. *See United States v. Franklin*, 323 F.3d 1298, 1302 (11th Cir. 2003) ("While flight is not proof of wrongdoing, it is indicative of such."). Under the totality of the circumstances, the officers were presented with a "fair probability that contraband or evidence" related to the methamphetamine investigation would be found in the minivan Willix drove to the pickup and attempted to flee in, which was unquestionably operational. *Tamari*, 454 F.3d at 1264. Accordingly, we affirm the denial of the motion to suppress the evidence found in Willix's minivan.

  B. *Willix's Post-Arrest Statements*

Willix next argues that his post-arrest statements should be suppressed because DEA agents promised him that they would not charge him with the drug

7

crimes if he cooperated, which effectively negated the *Miranda* warning that anything he said could and would be used against him.

Where a defendant is provided with a proper *Miranda* advisement, the government can rely on his post-*Miranda* statements if it shows that the defendant's waiver of his right to remain silent was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Barbour*, 70 F.3d at 585. This requires that the waiver was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 585.

The district court did not err in denying Willix's motion to suppress his statements, because Willix was properly instructed as to his *Miranda* rights, he voluntarily waived his rights, and the evidence fails to demonstrate that the agents made any promises inducing him to do so. Willix does not contest that he was read his *Miranda* rights and verbally waived those rights. During the suppression hearing, two of the DEA agents that interviewed Willix testified that while they told Willix they would convey the truthfulness of his information to the prosecutor, they did not promise that his cooperation would yield any benefit. Furthermore, Willix himself admitted that the agents did not make any explicit promises to him, but that based on his past experience, he felt like if he cooperated it would help reduce his sentence. The evidence supports the district court's finding that agents

8

did not make any promises to Willix in exchange for his cooperation. We therefore affirm the denial of Willix's motion to suppress his post-arrest statements.

### C. Willix's Requested Jury Instruction

Lastly, Willix argues that the court erred when it failed to provide his requested jury instruction on the meaning of "inflicts" in 18 U.S.C. § 111(b), which provides for a separate, enhanced crime when a defendant "inflicts bodily injury" while forcibly assaulting a federal officer. *See United States v. Siler*, 734 F.3d 1290, 1296 (11th Cir. 2013). Willix, citing the Sixth Circuit, argues that "inflicts" is restricted to "direct physical causation of physical harm." *See United States v. Zabawa*, 719 F.3d 555, 560 (6th Cir. 2013).

We find that the district court did not err in refusing to provide Willix's specialized instruction. The district court's instruction, that the government had to prove beyond a reasonable doubt that "the Defendant inflicted bodily injury," was an accurate, and literal, reflection of the statute, which itself leaves the term "inflict" undefined. *McGarity*, 669 F.3d 1218, 1232. While under certain circumstances it may be necessary to distinguish "inflict" from mere proximate cause, *see Zabawa*, 719 F.3d at 557; *compare United States v. Jackson*, 310 F.3d 554, 557 (7th Cir. 2002), we have not yet recognized this distinction. And in this case, where two officers were injured during a violent physical struggle with

Willix, we see no need to do so.  Accordingly, we affirm the decision of the district court.

## IV.

We affirm the denial of Willix's motion (1) to suppress the evidence recovered from his minivan; (2) to suppress his statements made to DEA agents after his arrest; and (3) to deliver a special instruction on the meaning of "inflicts" under 18 U.S.C. § 111(b).

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

February 05, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 16-17611-BB
Case Style: USA v. Altius Willix
District Court Docket No: 8:16-cr-00211-RAL-JSS-1

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Carol R. Lewis, BB at (404) 335-6179.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion